UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED WITH THE
COURT SECURITY OFFICER
CSO:
D:

)
SHARQAWI ABDU ALI AL-HAJJ )
(ISN 1457), )
 )
    Petitioner, )
 )
   v. ) Civil No. 09-745 (RCL)
 )
BARACK OBAMA, *et al.*, )
 )
    Respondents. )
_____)

## MEMORANDUM OPINION

Before the Court is petitioner's Motion [1472] to Strike Statements in the Factual Return. Upon consideration of the motion, respondents' opposition, the reply thereto, and the applicable law, the Court will grant in part and deny in part petitioner's motion. The Court's reasons are set forth below.

### I.   Factual & Procedural Background

Petitioner, who is currently detained at Guantanamo Bay, was captured in Karachi, Pakistan in February 2002. Petitioner's Motion to Strike (Mot. to Strike) Ex. A, Dec. 15, 2010 [1472]. He was held in solitary confinement in Pakistan for three weeks. *Id.* Petitioner's declaration states that he was thereafter sent to a prison in Jordan, where he was kept in an isolation cell and interrogated extensively. *Id.* He alleges that he was placed on the ground during interrogations, "with the interrogator in a chair above [petitioner] with his foot on [petitioner's] face." *Id.* He further alleges that, while in Jordan, he was "beaten regularly," "threatened with electrocution and serious physical violence," and "regularly beaten with a rod on the soles of [his] feet." *Id.* Petitioner states

that he initially refused to sign a document containing statements he had not made, but that—after his interrogators threatened him—he ultimately signed the document. *Id.*

Petitioner alleges that, after two years in Jordan, he was flown to a "Dark Prison" in Kabul, Afghanistan, where he "was kept in complete darkness and subjected to continuous loud music." *Id.* He complains that his cell was filthy, that the food was extremely bad, and that he was force-fed when he did not eat. *Id.* Petitioner states that he remained in the Dark Prison for five months, after which he was flown to Bagram Air Force Base. *Id.* Respondents have indicated that they will neither admit nor deny petitioner's allegations regarding the time prior to his arrival at Bagram. Respondents' Opposition (Opp'n) 25, Feb. 4, 2011.

Petitioner arrived at Bagram in May 2004, at which point he came into the custody of the U.S. Department of Defense. Opp'n 6. Petitioner was told that Bagram "was a base belonging to the American Army." Mot. to Strike Ex. A [1472]. He alleges that, while at Bagram, he was "kept in isolation for two and a half months, in a two foot by three foot wooden cage with no toilet." *Id.* He further alleges that "during that time, [he] was beaten by two soldiers." *Id.* Respondents deny both allegations and offer evidence in rebuttal, which the Court will assess below. In August 2004, after four months at Bagram, petitioner was moved to Guantanamo Bay.

Petitioner's pending motion seeks an order striking statements attributed to him in respondents' factual return. Petitioner argues that these statements were made after he had been subjected to the unrefuted physical and psychological abuse described above. This Court previously ordered that respondents provide petitioner with "all reasonably available evidence that petitioner was physically or psychologically coerced from the

time of his capture to the time he provided the statements relied on in the factual return." Order, Sept. 4, 2009 [1307]. The Court further ordered that, should respondents "refuse to deny the allegations of coercion or provide the evidence of coercion as ordered by this Court, the Court will not allow the government to use any forms of petitioner's statements in its case-in-chief." *Id.* As noted above, respondents neither admit nor deny any allegations regarding the period of time petitioner spent in Jordan and Kabul, nor have they produced any evidence relating to those allegations. Petitioner thus argues that respondents are precluded from using his statements in any manner in the factual return. Respondents oppose petitioner's motion, arguing that it improperly asks the Court to apply a *per se* rule that any unrefuted allegation of torture renders all subsequent statements inadmissible.

## II. Legal Standard

Respondents argue that the Court—even if it accepts petitioner's unrefuted allegations of torture as true—should not adopt a *per se* rule excluding all subsequent statements. Rather, respondents ask the Court to assess whether the effects of the alleged torture were attenuated with respect to petitioner's statements at Bagram and later at Guantanamo Bay, such that those statements were untainted by prior coercion.

The Court agrees that attenuation analysis is appropriate here. In criminal law, the use of torture or coercion to procure information does not automatically render subsequent confessions unreliable. *United States v. Bayer*, 33 U.S. 532, 540–41 (1947). The effects of earlier coercion may have dissipated such that subsequent confessions can be considered voluntary. *Id.*; *Oregon v. Elstad*, 470 U.S. 298, 311–12 (1985). When determining whether the effects of earlier coercion have dissipated, criminal courts apply

a "totality of the circumstances" test. *United States v. Karake*, 443 F. Supp. 2d 8, 87 (D.D.C. 2006). This multi-factor inquiry enables courts to assess whether there has been a "break in the stream of events . . . sufficient to insulate the statement from the effect of all that went before." *Clewis v. State of Texas*, 386 U.S. 707, 710 (1967).

Factors guiding this inquiry include "the time that passes between confessions, the change in place of interrogations, and the change in identity of the interrogators." *Elstad*, 470 U.S. at 310. Other factors include "the length of detention," "the repeated and prolonged nature of questioning," and "the use of physical punishment such as the deprivation of food or sleep." *Scheckloth v. Bustamonte*, 412 U.S. 218, 226 (1973). Additionally, courts may consider "the continuing effect of the prior coercive techniques on the voluntariness of any subsequent confession." *Karake*, 443 F. Supp. 2d at 87. The government bears the burden of proving by a preponderance of the evidence that each confession was voluntary. *Id.* at 50.

Courts in this District have already applied the totality of the circumstances test in the context of Guantanamo Bay litigation. *See Anam v. Obama*, 696 F. Supp. 2d 1, 6–8 (D.D.C. 2010) (finding that the government had failed to establish that the petitioner's statements were untainted by prior coercion); *Mohammed v. Obama*, 704 F. Supp. 2d 1, 24–30 (D.D.C. 2009) (finding that the temporal break between a coerced confession and a subsequent confession was not long enough, given the length and severity of abuse, to remove the taint from the subsequent confession); *Al Rabiah v. United States*, 658 F. Supp. 2d 11, 36–37 (D.D.C. 2009) (finding that, in the absence of evidence to the contrary, the effects of torture could taint a confession made nine months later). As in the criminal law context, the government bears the burden of demonstrating that a particular

statement was not the product of coercion. *Anam*, 696 F. Supp. 2d at 7; *see also Hatim v. Obama*, 677 F. Supp. 2d 1, 12 (D.D.C. 2009) ("[W]hen—as here—the government presents no evidence to dispute the detainee's allegations of torture and fails to demonstrate that the detainee was unaffected by his past mistreatment, the court should not infer that the prior instances of coercion or torture did not impact the accuracy of detainee's subsequent statements.")

### III. Discussion

At the outset, the Court finds that respondents—who neither admit nor deny petitioner's allegations regarding his custody in Jordan and Kabul—effectively admit those allegations. Accordingly, the Court accepts petitioner's allegations as true. In Jordan, petitioner experienced patent coercion during interrogations—including intimidation, regular beatings, and threats of electrocution and violence. In Kabul, he was forced to endure complete darkness and continuous loud music. The Court thus finds that petitioner was subject to physical and psychological coercion in Jordan and Kabul. *See, e.g., Mohammed*, 704 F. Supp. 2d 1 at 26–27 (finding that the petitioner, who was regularly beaten, held in stress positions for days at a time, kept in darkness, subjected to loud music, and forced to inculpate himself during interrogations, was physically and psychologically tortured).

In light of this finding, the Court will apply the attenuation analysis described above to determine the admissibility of petitioner's subsequent statements. In their factual return, respondents rely on statements petitioner provided immediately following his capture in Pakistan—before his abuse began—and during his detention at Bagram and Guantanamo Bay—after, respondents assert, his abuse ended. Accordingly, the Court will

consider whether statements made in Pakistan, at Bagram, and at Guantanamo Bay were coerced or, alternatively, whether they were tainted by prior coercion.

### A. *Petitioner's Statements in Pakistan*

Petitioner alleges that, following his capture in February 2002, he was held in solitary confinement in Pakistan for three weeks. Mot. to Strike Ex. A. There, he was "told that if [he] cooperated [he] would be sent home." *Id.* He states that, although he cooperated, he was sent to Jordan. *Id.* Petitioner's vague statement that he was held in solitary confinement, without more, gives no indication that he was subject to abuse, torture, or coercion. The Court thus finds no reason to exclude statements made while petitioner was in custody in Pakistan.

### B. *Petitioner's Statements in Bagram*

As discussed above, the Court finds that petitioner was subject to physical and psychological coercion in Jordan and Kabul. Respondents deny, however, any allegations of torture occurring *after* petitioner's arrival at Bagram in May 2004. Accordingly, the Court must first weigh petitioner's allegations against respondents' evidence to determine whether his statements were the product of coercion. If the Court finds that petitioner's statements were not coerced, it must then determine whether those statements were tainted by prior coercive treatment.

#### 1. Petitioner was not subject to ongoing torture or coercion at Bagram.

Petitioner contends that he was subject to ongoing torture at Bagram. He makes two allegations regarding his custody there—first, that he "was kept in isolation for two and a half months, in a two foot by three foot wooden cage with no toilet," and second, that he "was beaten by two soldiers."

With regard to petitioner's first allegation, respondents assert that petitioner was never kept in a two-by-three-foot wooden cage. Respondents rely on the declarations of personnel present at Bagram during petitioner's confinement. These declarants admit that they either did not know petitioner personally or were not familiar with the specific circumstances of his confinement. As their declarations indicate, however, they were quite familiar with the general circumstances of confinement at Bagram.

[3] a criminal investigator for the U.S. Army Criminal Investigation Command, states that he was "very familiar" with Bagram's operations and "walked through and/or around the facility on a daily basis." Opp'n Ex. 2, at ¶ 3. He further states that he "never saw anything meeting [petitioner's] description" of a two-by-three-foot cage. *Id.* at ¶ 4. He declares that he is "certain that if anyone had been kept under such circumstances [he] would have either seen or heard about it." *Id.*

[3] who was an agent with the Department of Defense's Criminal Investigation Task Force (CITF) while petitioner was at Bagram, visited the facility more than twenty times in June 2004. Opp'n Ex. 3, at ¶ 17. He states that "[o]n each visit, I stayed at the facility for several hours and was able to see the entire facility. I do not recall seeing any detainees in cells or cages that were 2 by 3 feet. The smaller, individual cells that I recall were approximately 8 by 10 feet." *Id.*

Finally, Major [3] the Army Judge Advocate assigned to Bagram during petitioner's confinement, "worked in the facility approximately 14 hours every day, including weekends, and, on a daily basis, walked through all of the locations where the detainees were held." Opp'n Ex. 4, at ¶ 3. She states that the "individual cells [at Bagram] were approximately nine by nine feet," "made of wood, [and] had air conditioning." *Id.* at

¶ 7. She further states that the individual cells had no toilets and that detainees were escorted to a bathroom on the main floor. *Id.* Due to the nature of her position, Major ▓ "was particularly concerned about ensuring that no detainee mistreatment occurred." *Id.* at ¶ 11. She thus declares that if any detainee had been kept in the circumstances petitioner alleges, "I would have either seen it or heard about it. I neither saw nor heard of any detainee that was kept in isolation in a two foot by three foot wooden cage with no toilet." *Id.*

The Court finds that these declarants have provided relevant and reliable evidence as to the conditions of confinement at Bagram. Notably, Major ▓ description of Bagram's isolation cells—aside from her statement as to their size—comports with petitioner's claim that his cell was wooden and had no toilet. Taken together with the other declarants' statements, this tends to suggest that petitioner's claim as to his cell's size was a misstatement. In any case, respondents' evidence—given the declarants' familiarity with the facility, as well as the consistency of their statements—negates petitioner's allegation that he was kept in a two-by-three-foot cage.

The brevity of petitioner's allegation further undermines its credibility. His sole description of the wooden cage is that it had no toilet. If a detainee were indeed confined to a two-by-three-foot space for over two months, one would expect some description of the effects of that experience. But petitioner makes no mention of the effects—physical, mental, or emotional—of such a lengthy confinement in a severely limited space.

Beyond his declaration, it appears that petitioner made his allegation on one other occasion—to attorney Kristin Wilhelm in 2006. *See* Mot. to Strike Ex. B. There is no other mention of his complaint in the record. Special Agent ▓ of CITF, who

interviewed petitioner at Bagram, states that he complained that guards had hit his head against a wall but "never complained to me that he had been placed in a two-foot by three-foot wooden cage." Opp'n Ex. 1, at 9. Special Agent [3] later interviewed petitioner at Guantanamo Bay, where he stated that "when he was in Jordanian custody, he was beaten, but he was treated well while in U.S. custody." Opp'n Ex. 1C, at 7.[1] Although petitioner's silence does not *disprove* his allegation, it is surprising given the alleged severity of his confinement and his apparent readiness to raise other complaints.

In sum, the Court finds that respondents' evidence—when compared to the brevity of petitioner's allegation and the lack of other evidence supporting it—refutes petitioner's allegation. Bagram's isolation cells, as described by respondents' evidence, were approximately eight by ten or nine by nine feet and made of wood. They did not have toilets, but occupants had access to a common bathroom. Confinement in such a cell simply does not constitute torture. Because petitioner has not established that he was confined to a two-by-three-foot space, the Court cannot find that the conditions of his confinement amounted to torture.

With regard to petitioner's second allegation, respondents assert that his statement that he was "beaten by two soldiers" does not support the inference that he was *regularly* beaten at Bagram. Respondents note that, while petitioner's declaration explicitly states that he was "beaten regularly" in Jordan, there is no indication—either in his declaration, or elsewhere in the record—that he was beaten more than once at Bagram.

---

[1] The Court makes no conclusions regarding the truth of this statement, but simply notes that petitioner—while raising other complaints, including complaints about his treatment at Bagram—never complained about the conditions in his cell.

The Court agrees that petitioner's statement does establish that he was subject to regular beatings at Bagram. Although a single beating can constitute abuse, petitioner's statement is not an allegation of ongoing torture. Moreover, there is no suggestion that petitioner considered the incident to have been part of an effort to coerce statements from him. In the absence of allegations or evidence to that effect, the Court finds that petitioner was not subject to coercion at Bagram.

### 2. Although petitioner's statements at Bagram were not coerced, they were tainted by prior coercive treatment.

Although petitioner has failed to demonstrate that his statements were coerced, the Court finds that they were not sufficiently attenuated from the coercive treatment he experienced in Jordan and Kabul. Petitioner gave the statements at issue in June and July 2004—one to two months after his arrival at Bagram in May 2004. Immediately prior to his arrival at Bagram, petitioner was subject to physical and psychological coercion in Kabul. The Court is not convinced, given such a short span between petitioner's experience in Kabul and his interviews at Bagram, that there was a "break in the stream of events . . . sufficient to insulate" his statements from the effects of prior coercion. *See Clewis*, 386 U.S. at 710. Indeed, the question here "is not the length of time between a previously coerced confession and the present confession, it is the length of time between the removal of the coercive circumstances and the present confession." *Karake*, 443 F. Supp. 2d at 89; *see also Anam*, 696 F. Supp. 2d at 8.

The Court recognizes that, upon petitioner's arrival at Bagram, the location of his interrogations and the identity of his interrogators changed. But these factors do not weigh heavily against the extremely short lapse of time between petitioner's experience

in Kabul and his subsequent statements, particularly given the length and nature of mistreatment in this case. Because respondents have failed to establish that the effects of coercion had dissipated by the time of petitioner's interviews in June and July 2004, the Court will grant petitioner's motion to strike with respect to any statements he made while in custody at Bagram.

### C. *Petitioner's Statements at Guantanamo Bay*

Petitioner has not alleged mistreatment at Guantanamo Bay. Thus, the Court need not assess whether his statements there were coerced. Because petitioner was subject to coercion in Jordan and Kabul, however, the Court must determine whether that coercion tainted his statements at Guantanamo Bay.

Petitioner gave the statements at issue in September and October 2004—one to two months after his arrival at Guantanamo Bay in August 2004. As the Court found above, petitioner was not subject to torture or coercion at Bagram. Thus, in considering whether the effects of prior coercion had dissipated, the relevant "temporal break" here is four to five months—that is, the period of time between petitioner's confinement in Kabul and his interviews at Guantanamo Bay.

The Court finds that petitioner's statements at Guantanamo Bay were not sufficiently attenuated from the coercive treatment he experienced in Jordan and Kabul. Although petitioner was free from coercion at Bagram or Guantanamo Bay, this does not establish that his statements at Guantanamo Bay were untainted by prior coercion. Indeed, respondents must "demonstrate that the detainee was *unaffected by his past mistreatment.*" *Hatim*, 677 F. Supp. 2d at 12 (emphasis added). Here, respondents have

failed to submit evidence from which the Court can conclude that petitioner was unaffected by his experience in Jordan and Kabul.

Respondents rely in part on petitioner's statement that "he was treated well while in U.S. custody," Opp'n Ex. 1C, at 7, but this does nothing to prove that petitioner was unaffected by *past* mistreatment. Moreover, the Court will not engage in circular reasoning by considering statements made at Guantanamo Bay to determine whether such statements were voluntary. Respondents further assert that petitioner's statements were removed from the period of his mistreatment by "several months," during which his location and interrogators had changed. Opp'n 33. But a mere four to five months of changed circumstances, when compared to the mistreatment petitioner suffered over the course of more than two years, does not suffice to remove the taint of coercion. *See Anam*, 696 F. Supp. 2d at 8 (finding that a six-month lapse was insufficient for the petitioner to have recovered from prior abuse where the government had "fail[ed] to establish that months of less-coercive circumstances provide sufficient insulation from forty days of extreme coercive conditions"). Furthermore, respondents have shown nothing in the circumstances surrounding petitioner's interrogations to indicate that his statements were voluntary and reliable. *See id.* at 9–10 (finding that statements to the Combatant Status Review Tribunal [CSRT] were free from prior coercion where such statements were made two years after coercive treatment had ended, where the CSRT proceedings were "conducted in a formal manner" and recorded for transparency, and where the petitioner had a personal representative).

Because respondents have failed to establish that the effects of coercion had dissipated by the time of petitioner's interviews in September and October 2004, the

Court will grant petitioner's motion to strike with respect to any statements he made while in custody at Guantanamo Bay.

## IV. CONCLUSION

For these reasons, petitioner's Motion to Strike Statements in the Factual Return will be granted in part and denied in part. A separate Order shall issue this date.

5/23/11
DATE

Royce C. Lamberth
ROYCE C. LAMBERTH
CHIEF JUDGE